AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA A. Reinitz                    )          USAO CW No. 25-163

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 25-MJ-1600 |
| | ) |
| | ) |
| | ) |
| BRIAN WALLACE | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 21, 2025 in the county of Philadelphia in the Eastern District of Pennsylvania, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951(a) and 2 | Hobbs Act Robbery and aiding and abetting |
| 18 U.S.C. §§ 924(c) and 2 | Use of a firearm in furtherance of a violent crime and aiding and abetting |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

/s Kelsie Judd

*Complainant's signature*

Kelsie Judd, Special Agent, FBI

*Printed name and title*

Sworn to before me and signed by telephone.

Date: July 31, 2025

Lynne A. Sitarski

Digitally signed by Lynne A. Sitarski
Date: 2025.07.31 17:17:18 -04'00'

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Honorable Lynne A. Sitarski, U.S. Magistrate Judge

*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Kelsie Judd, being duly sworn under oath, state the following:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so since August 2020.  I am currently assigned to the Philadelphia Division Violent Crimes Task Force (VCTF), which investigates violations of Federal law, to include robberies of banks, robberies of businesses that affect interstate commerce (also known as Hobbs Act robberies), kidnappings, and fugitives.

2.      This affidavit is being submitted in support of a criminal complaint and arrest warrant charging BRIAN WALLACE with violating Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act Robbery and aiding and abetting) and 924(c) and 2 (use of a firearm in furtherance of a violent crime and aiding and abetting).

3.      As further described below, there is probable cause to believe that BRIAN WALLACE and two other individuals, identified as PERSON 1 and PERSON 3[1] executed a robbery of a Brink's armored truck on June 21, 2025.

### A.  The Robbery of the Brink's Truck

4.      On Saturday, June 21, 2025, at approximately 8:05 a.m., Philadelphia Police Department Officers from the 24th District responded to a radio call for a "Robbery in Progress" at the Home Depot located at 2539 Castor Avenue, Philadelphia, Pennsylvania 19134. Upon arrival, 24th District Officers located the complainant, DS,[2] who is a driver for Brink's Inc (Armored Truck). The complainant stated that while he was walking down the rear alley of Home Depot, off of the 3700 Block of Thompson Street, Philadelphia, he was approached from

---

[1] PERSON 1 and PERSON 3 are known to law enforcement, but for the purposes of this document, their identities are being withheld.
[2] The identity of DS is known to law enforcement.

behind by two (2) males armed with AR-style rifles.  The two (2) offenders forced DS to the ground, disarmed him of his Brink's Inc. issued firearm, and took his keys. According to DS, offender #1 stayed with DS while offender #2 gained access to the Brink's truck.

5.      On June 21, 2025, immediately after the robbery, members of the Philadelphia Police Department East Detective Division (PPD-EDD) and the Philadelphia Police Department External Services/FBI Violent Crimes Task Force (PPD-FBI VCTF), and the Philadelphia Police Department Crimes Scene Unit processed the scene.  DS was interviewed, and video surveillance in the immediate area was recovered.  With the assistance of Brink's regional security, it was determined that approximately $2,025,000.00 in United States Currency was taken from inside the Brink's truck to include one (1) cellular scanner.  The cellular scanner was recovered by law enforcement approximately 4 blocks from the scene of the robbery, and was broken when found, consistent with being thrown out of a car window.

6.      Brink's has confirmed that the stolen money was owned by Brink's at the time it was taken.  Brink's is a national cash transport company that delivers and picks up United States currency from a variety of stores and businesses in several states, and thus, affects interstate commerce.

7.      FBI Special Agents contacted the Real Time Crime Center (RTCC) for any and all vehicles in the area of Aramingo Avenue and Castor Avenue at the time of the robbery. RTCC provided a black Hyundai Sonata with a Virginia temporary registration tag/license plate ***95U[3] traveling northbound on the 3700 block of Aramingo Avenue on June 21, 2025, at 8:04 a.m., which is consistent with the direction of travel that the offenders used after the robbery.

---

[3] The full temporary tag information is known to law enforcement but is redacted for purposes of this document.

2

8.      Brink's regional security provided the interior and exterior video from the Brink's truck.  The video shows that DS parks and exits the side door of the Brink's truck at approximately 7:59 a.m. and heads towards the Home Depot alley.  Shortly thereafter, a black Hyundai sedan is seen pulling behind the Brink's truck.  One robber, identified here as offender #2, exits the rear passenger side of the Hyundai and is seen running towards the Home Depot alley.  The other robber, identified herein as offender #1, exits from the driver's seat door.  Both robbers appear to have AR-style rifles on them as they move.  Offender #2 is observed on video surveillance wearing dark-colored cargo pants with a wide belt loop, a black sweatshirt with a tan/yellow strip at the bottom (possibly a shirt underneath the sweatshirt), a black mask with ski goggles, and a black hat.  Surveillance shows offender #2 enter the truck at approximately 8:01 a.m.  Once inside the truck, offender #2 opens the second door inside the truck with the key that was left inside the door.  Offender #2 then uses the complainant's key fob to open the third door inside the truck that stores the cash.  Once through the third door, offender #2 removes a large brown bag from his waistband, and starts to fill it with the cash that is inside the truck.  Offender #2 then exits the Brink's truck.  Offender #2 moves swiftly through the truck, showing familiarity with the various safety features within the truck, as well as where the driver's keys need to be used in order to access areas of the truck.

9.      The video shows that once outside of the Brink's truck, offender #1 and offender #2 got back into the Hyundai Sonata and fled the area traveling northbound on the 3700 block of Aramingo Avenue.  They left DS Brink's-issued firearm in the alley near DS when they fled.

**B.  Investigation of BRIAN WALLACE and the Hyundai Sonata used by the robbers**

10.      In the days following the robbery, law enforcement conducted a canvas in the area around the robbery to attempt to obtain video surveillance before and after the Brink's truck robbery.  Law enforcement recovered video surveillance of the Hyundai Sonata used by the robbers to approach the Brink's truck with both the temporary tag, as seen at the time of the robbery, and with a Pennsylvania license plate, MWJ-5454, on June 21, 2025.

11.      Law enforcement ran Pennsylvania registration MWJ-5454 through NCIC/PCIC which revealed that the Hyundai Sonata was a rented vehicle through Enterprise.

12.      Law enforcement contacted an Enterprise legal representative who, subject to a subpoena, provided information on the Hyundai Sonata bearing Pennsylvania registration MWJ-5454, including the vehicle's vehicle identification number ("VIN").  The Enterprise legal representative informed law enforcement that the Hyundai Sonata was rented by an employee of Enterprise, BRIAN WALLACE.  The rental agreement reflected that WALLACE had a date of birth in November 1993, and that he provided his phone number as 215-XXX-5865 (hereinafter referred to as WALLACE PHONE).  His address was listed as being on the 1500 block of North 59th Street in Philadelphia.  In addition to this address, law enforcement has confirmed through cell site location information, as well as surveillance, that WALLACE currently frequents an address on the 2300 block of North Garnet Street in Philadelphia.  WALLACE rented the vehicle on June 19, 2025, at 6:39 a.m. from the Enterprise Rent-A-Car located at 1 Arrivals Road, Philadelphia, and returned it on June 21, 2025, at 11:27 a.m., less than 4 hours after the robbery. Law enforcement later identified that WALLACE was an employee of Enterprise.  Enterprise told law enforcement that WALLACE was scheduled to work on June 21, but did not report to work.  Enterprise has provided information to law enforcement that WALLACE last worked the

4

day after the robbery, June 22, though he stayed for only 2 hours of his scheduled all-day shift and has not returned to work since.

13.    Law enforcement reviewed video provided by Enterprise of WALLACE renting the Hyundai Sonata on June 19 and the return of the vehicle on June 21.  When WALLACE rented the car on June 19, he was alone when completing the rental paperwork and left alone in the vehicle.  On June 21, WALLACE was alone in the vehicle during the return of the vehicle. Video showed him exit the Enterprise parking lot, walk toward a silver Ford sedan, and enter the rear passenger seat.  License plate readers and additional video recovered led investigators to identify this vehicle as a silver Ford Fusion, which is tied to PERSON 3, as discussed below.

14.    Automated License Plate reader searches show that on the afternoon before the robbery, June 20, 2025, the Hyundai Sonata was captured near the northeast corner of 58th and Larchwood Avenue.  This location is on the side street adjacent to Addison Street, which is approximately 200 feet from the front door of PERSON 1.

### C.  Investigation of PERSON 1

15.    PERSON 1 was a Brink's employee who was suspended and later terminated as the result of an internal theft investigation.  Brink's provided PERSON 1's address to law enforcement and which was also listed on PERSON 1's driver's license.  Brink's reported his phone number, PHONE 1. PHONE 1 was confirmed to be registered to PERSON 1 through records obtained by subpoena from Verizon.  Brink's also provided information that PERSON 1 had been assigned to drive the truck that was robbed on two dates prior to the robbery, May 5 and June 3, 2025.

16.     Brink's provided video of PERSON 1 in an armored truck during his employment with Brink's, which I have reviewed.  When watching the video, PERSON 1 appears similar in build to the masked robber who entered the Brink's truck on June 21.

**D. Investigation of PERSON 3 and silver Ford Fusion**

17.     During video review of recovered surveillance, law enforcement observed that on June 21, 2025, a silver Ford Fusion, Pennsylvania license plate/tag XXX-1684,[4] appeared to follow the Hyundai Sonata used in the robbery, as captured on the Philadelphia city camera located at Allen and Tioga.  Tag reads captured the two vehicles in the same area approximately 90 minutes before the robbery occurred on June 21, 2025.  The two cars were seen together again several hours after the robbery, near the Philadelphia airport.

18.     A records check for Pennsylvania license plate XXX-1684, seen on the Ford Fusion, provided law enforcement with the VIN for the car, and the legal owner, who is not PERSON 3.  However, a records check of Philadelphia Police car stops (commonly known as a "75-48A") shows that there were nine (9) car stops between March 5, 2024, and June 1, 2025, where PERSON 3 was operating the Ford Fusion.  PERSON 3's address was listed on the police car stops.  This address is also listed as the legal address on PERSON 3's driver's license.  City camera tag readers show the Ford Fusion parked on the same block as PERSON 3's address, with approximately 3 dozen hits in this area between August 2024 and the present.  On July 8, 2025, law enforcement conducted surveillance in the area of the address and observed an individual that appears to be PERSON 3 walking in the vicinity of the known address. Additional

---

[4] The full license plate is known to law enforcement but redacted for purposes of this document.

surveillance efforts captured PERSON 3 entering and exiting the known address as well as the silver Ford Fusion parked on the street near the residence.

19.     Open-Source records indicate PHONE 3 is utilized by PERSON 3. PERSON 3 filed two motor vehicle insurance claims, one in 2022 and one in 2023. A review of these claims shows that PERSON 3 listed a cell phone number on both claims as PHONE 3 and listed the known residential address.

20.     Additionally, on the day of the robbery, June 21, 2025, there was a tag read captured for the Ford Fusion at 10:41 a.m., showing it parked approximately two (2) blocks from the known address of PERSON 3. This time is approximately 2 and a half hours after the robbery, and less than an hour before the Hyundai Sonata was returned to Enterprise by WALLACE, with the car of PERSON 3 seen following behind the Sonata.


**E.  Currently known phone communications**

21.     Legal process was obtained for phone records for PHONE 1, a phone utilized by PERSON 1. The subscriber of PHONE 1 was listed as PERSON 1 with an address consistent with the employment information provided by Brink's. Below is a summary of PHONE 1's call detail records around the time of the robbery:

> a.     On June 21, 2025, at approximately 8:53 a.m., less than an hour after the robbery, PHONE 1 received a call from PHONE 3 that was not answered and was forwarded to voicemail.

> b.     On June 21, 2025, at approximately 9:07 a.m., PHONE 1 received a call from WALLACE PHONE that was not answered and was forwarded to voicemail.

     c.     On June 21, 2025, at approximately 10:15 a.m., PHONE 1 called PHONE 3. This call was not answered.

     d.     On June 21, 2025, at approximately 10:15 a.m., PHONE 1 called PHONE 3 for a 17 second phone call.

22.     Legal process was obtained for phone records for WALLACE PHONE.  Below is a summary of WALLACE's communication records from July 2, 2025, to July 25, 2025:

     a.     WALLACE PHONE communicated with PHONE 3 91 times between July 3, 2025, and July 25, 2025.  Of these communications, only one was a text message.  The remainder were phone calls with durations ranging from three seconds to more than nineteen minutes.

     b.     WALLACE PHONE communicated with PHONE 1 79 times between July 6, 2025, and July 25, 2025.  All of these communications were phone calls, with durations ranging from two seconds to twenty-one minutes.

23.     Additionally, the following cell site location information is relevant to this affidavit:

     a.     On June 20, 2025, the day before the robbery, at approximately 8:01 p.m., available records show that the location of WALLACE PHONE and PHONE1 are consistent with being in the same location, and at 8:10 p.m. location data indicates WALLACE PHONE and PHONE 1 are still together.

     b.     On June 21, 2025, at approximately 5:35 a.m., approximately 2 and a half hours before the robbery, WALLACE PHONE contacted PHONE 1, and location data indicates the two phones were at separate locations.

c.     On June 21, 2025, at approximately 6:37 a.m., WALLACE PHONE connects with PHONE 3, and location data indicates the two phones are at separate locations.

d.     On June 21, 2025, at the time the robbery occurred, approximately 8:00 a.m., location data shows WALLACE PHONE was located in the area where the robbery occurred.

e.     On June 21, 2025, at approximately 9:02 a.m., WALLACE PHONE connects to PHONE 3, and then at approximately 9:07 a.m., WALLACE PHONE makes an outgoing call to PHONE 1.  Per PHONE 1 records, the call was then immediately forwarded to voicemail, indicating that PHONE 1 was either off or in airplane mode during this time period.

f.     On June 21, 2025, at approximately 10:38 a.m., location data shows WALLACE PHONE and PHONE 1 in the same general area.

g.     On June 21, 2025, at approximately 11:36 a.m., location data shows WALLACE PHONE and PHONE 1 in the area of the Philadelphia Airport which is consistent with the time that WALLACE returned the Sonata to Enterprise.

24.     Legal process was obtained for phone records for PHONE 3 as well.  An analysis conducted on the phone records for WALLACE PHONE, PHONE 1, and PHONE 3, was conducted to determine communication patterns between the three subjects. Below is a summary of that analysis:

9

a.      In the time period of June 1, 2025, through June 19, 2025, WALLACE PHONE and PHONE 1 have approximately 15 completed calls with durations longer than 5 seconds.

b.      Between June 20, 2025, and June 21, 2025, the day before and the day of the robbery, WALLACE PHONE and PHONE 1 have a notable increased call frequency with approximately 13 completed calls with durations longer than 5 seconds in just two days.

c.      In the time period of June 22, 2025, through July 15, 2025, WALLACE PHONE and PHONE 1 have approximately 61 completed calls with durations over 5 seconds, a notable increase in frequency from the communication patterns prior to the robbery.

d.      In the time period of June 1, 2025, through June 19, 2025, WALLACE PHONE and PHONE 3 have approximately 28 completed calls with durations longer than 5 seconds.

e.      Between June 20, 2025, and June 21, 2025, the day before and the day of the robbery, WALLACE PHONE and PHONE 3 have a notable increased call frequency with approximately 14 completed calls with durations longer than 5 seconds in just two days.

f.      In the time period of June 22, 2025, through July 15, 2025, WALLACE PHONE and PHONE 3 have approximately 56 completed calls with durations over 5 seconds, a notable increase in frequency from the communication patterns prior to the robbery.

25.    I believe, based on the circumstances described herein, there is probable cause to charge BRIAN WALLACE with the robbery of a Brink's truck on June 21, 2025, in violation of Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act Robbery and aiding and abetting) and 924(c) and 2 (use of a firearm in furtherance of a violent crime and aiding and abetting).

_/s Kelsie Judd_____
Kelsie Judd
Special Agent
Federal Bureau of Investigation

Sworn to before me
this __31st__ day
of July, 2025

Lynne A.
Sitarski

Digitally signed by Lynne
A. Sitarski
Date: 2025.07.31 17:18:38
-04'00'

HONORABLE LYNNE A. SITARSKI
*United States Magistrate Judge*

11